IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

_____
LINDA DAWN HENDRICKSON )
)
Plaintiff, )
)
v. )  Civil Action No. WGC-10-2917
)
MICHAEL J. ASTRUE )
Commissioner of Social Security )
)
Defendant. )
_____)

## MEMORANDUM OPINION

Plaintiff Linda Dawn Hendrickson ("Ms. Hendrickson" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401-433. The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition. *See* ECF Nos. 3, 7-8[1] Pending and ready for resolution are Plaintiff's Motion for Summary Judgment, or in the Alternative, Motion for Remand (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 21). No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.

---

[1] The case was subsequently reassigned to the undersigned.

1

1. **Background**.

On January 29, 2007 Ms. Hendrickson filed an application for DIB[2] alleging a disability onset date of March 6, 2004 due to protrusion of disc in her back and carpal tunnel syndrome. *See* R. at 106, 129. Ms. Hendrickson's application was denied initially on May 4, 2007. R. at 46-49. On July 6, 2007 Ms. Hendrickson requested reconsideration, which the Social Security Administration received on July 9, 2007. R. at 50. On January 18, 2008 Ms. Hendrickson's DIB application was denied again. R. at 51-52. On February 4, 2008 the Social Security Administration received Ms. Hendrickson's request for a hearing before an Administrative Law Judge ("ALJ"). R. at 55. On September 4, 2008 an ALJ convened a hearing. R. at 23-43. Ms. Hendrickson was represented by counsel. During the hearing the ALJ obtained testimony from Ms. Hendrickson and a vocational expert ("VE"). In the October 29, 2008 decision the ALJ found Ms. Hendrickson was not disabled at any time from March 6, 2004 (alleged onset date of disability) through September 30, 2008 (the date last insured) within the meaning of the Act. R. at 21. Ms. Hendrickson requested a review of the hearing decision. R. at 6. On September 24, 2010 the Appeals Council denied Ms. Hendrickson's request for review, R. at 1-3, thus making the ALJ's determination the Commissioner's final decision.

2. **ALJ's Decision**.

The ALJ evaluated Ms. Hendrickson's claim for DIB using the sequential evaluation process set forth in 20 C.F.R. § 404.1520. Ms. Hendrickson bears the burden of demonstrating her disability as to the first four steps. At step five the burden shifts to the Commissioner. If

---

[2] Ms. Hendrickson "has acquired sufficient quarters of coverage to remain insured through September 30, 2008[.]" R. at 10. *See also id.* at 12, 125, 143.

Ms. Hendrickson's claim fails at any step of the process, the ALJ does not advance to the subsequent steps. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

At step one the ALJ found Ms. Hendrickson has not engaged in substantial gainful activity from March 6, 2004 through September 30, 2008. R. at 12. The ALJ concluded at step two that Ms. Hendrickson has the following severe impairments: "Lumbar Degenerative Disc Disease, status post fusion, Carpal Tunnel Syndrome, and Obesity[.]" R. at 12, 15. The ALJ further found at step two that Ms. Hendrickson's hypothyroidism, asthma and depression/anxiety were non-severe impairments.

In accordance with 20 C.F.R. § 404.1520a, the ALJ followed a special technique to evaluate the severity of Ms. Hendrickson's depression/anxiety. The four broad functional areas ((1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace and (4) episodes of decompensation) are known as the "paragraph B" criteria for most of the mental disorders listed in Appendix 1. The ALJ determined Ms. Hendrickson has *mild, if any,* psychological limitations in the area of activities of daily living. Ms. Hendrickson cares for five (5) young children including one who is disabled. "She does have some limitations in the performance of some tasks such as heavy lifting, but these limitations are the result of back pain and not due to any psychological symptoms[.]" R. at 16. With regard to the area of social functioning the ALJ found Ms. Hendrickson has *mild* limitation. "The record discloses the claimant can be irritable when in pain, but that she has not been fired from any job, nor does she engage in socially isolating behavior. She attends her children's school functions as she is physically able, she . . . engages appropriately with her medical providers, and she gets along well under the circumstances with her husband and children." *Id.* For the area of

concentration, persistence or pace the ALJ determined Ms. Hendrickson has no more than *mild* limitation.  A State agency psychiatric consultant found Ms. Hendrickson "to be alert and oriented with all three (3) spheres of memory functioning (immediate, short-term, and long-term) to be intact.  The claimant engaged in the examination process without distraction; her concentration was determined to be intact; and she indicated that she helps her children with their homework[.]" *Id.* (citations omitted).  For the fourth broad functional area, episodes of decompensation, the ALJ found Ms. Hendrickson has not experienced any episodes of decompensation of extended duration.  "Based upon her examination, Dr. Chester ascribed the claimant a Global Assessment of Functioning (GAF) score of 70.  According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorder – Fourth Edition, Washington, D.C., American Psychiatric Association, 2000, at p. 34, a GAF of 61 or above generally reflects only mild psychological symptomatology." *Id.* at 17.

Having completed the special technique for evaluating Ms. Hendrickson's depression/anxiety, the ALJ resumed the sequential evaluation process.  At step three the ALJ determined Ms. Hendrickson did not have an impairment or combination of impairments which met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart A, Appendix 1.  Regarding Ms. Hendrickson's obesity, the ALJ noted the listed impairment for this condition has been rescinded and thus no "listing level severity" exists.  The ALJ therefore looked to SSRs 02-1p and 96-8p to determine the effects of Ms. Hendrickson's obesity on work-related functional abilities.  Such work-related limitations due to obesity would be addressed in assessing Ms. Hendrickson's residual functional capacity.

The ALJ considered Listing 1.04 with regard to Ms. Hendrickson's lumbar degenerative disc disease. The ALJ found Ms. Hendrickson failed to establish that her lumbar degenerative disc disease either met or medically equaled the severity of Listing 1.04. "The claimant has not demonstrated the requisite level of nerve root or spinal cord compromise; nor has she provided any findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis; nor has she established an inability to ambulate effectively, as that term is defined in Section 1.00(B)(2)(b) of the Listings of Impairments." R. at 17-18.

Next the ALJ determined Ms. Hendrickson's residual functional capacity ("RFC"). The ALJ found Ms. Hendrickson can perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), "but that due to her low back pain, she was required to occasionally alternate between sitting and standing positions and she could perform postural activities only occasionally. In addition, due to her carpal tunnel impairment, the claimant was limited to non-continuous use of her bilateral upper extremities. Finally, due to the combination of her impairments and the side-effects of her medications, the claimant was limited to a simple, routine level of unskilled sedentary work." R. at 18. At step four the ALJ found, through Ms. Hendrickson's date last insured (September 30, 2008), Ms. Hendrickson was unable to perform any of her past relevant work as a fast food worker, animal organization worker, nursing assistant, retail clerk, bartender, service desk worker and gas station attendant. *Id.* at 20.

Finally, at step five, the ALJ considered Ms. Hendrickson's age (37 years old on the date last insured, defined as a younger individual between the ages of 18-44), education (high school), past work experience (transferability of job skills is not material) and her RFC (sedentary work with limitations). The ALJ found the Social Security Administration met its

5

burden of proving Ms. Hendrickson was capable of performing other work that existed in significant numbers in the national economy through September 30, 2008, the date last insured, relying on the testimony of the VE. R. at 21, 40. Accordingly, the ALJ concluded Ms. Hendrickson was not disabled within the meaning of the Act from March 6, 2004, the alleged onset date, through September 30, 2008, the date last insured. *Id.* at 21.

3. **Standard of Review**.

The role of this Court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456. This Court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

4. **Discussion.**

A.    *Alleged Failure to Consider Pain*

At the hearing the ALJ inquired of the VE the vocational impact of pain upon a hypothetical individual's ability to work. The VE answered the question. Plaintiff contends the ALJ failed to specifically include the impact of Ms. Hendrickson's pain in the hypothetical

6

question that included the residual functional capacity and, further, omitted any reference to the impact of Ms. Hendrickson's pain in the decision.

The following colloquy occurred between the ALJ and the VE concerning the impact of pain.

> Q: Now does – – would – – could pain have any vocational impact?
>
> A: Yes, Your Honor.
>
> Q: Well, could you tell me what vocational impact pain might have?
>
> A: Yes, if pain is chronic and severe it can prevent an individual from performing any work at all. If it is moderate it can prevent an individual from concentrating on positions that do require detail. If it is mild and occasional it has only a little bit of an impact.
>
> Q: Okay. Now say we have a hypothetical individual, a younger individual, with a GED education and past relevant work history similar to that of the Claimant. And if this hypothetical individual has all the symptoms and limits that the Claimant stated here today during the hearing that she had would such a hypothetical individual be capable of doing any jobs?
>
> A: No, Your Honor. The Claimant talked about problems walking and standing. She said she can only walk and stand about eight minutes at a time. She says she has problems sitting and that she has to change positions often. She can drive up to half-an-hour but still must change positions often. She says because of carpal tunnel she has some numbness and that she has no fine motor skills. She says that her children and her father-in-law do, you know, most of the household chores along with her husband. And she says that she has to rest. And if you find this testimony credible there would be no work that, that individual could perform.
>
> Q: Okay. An alternative situation, okay, what if we have a hypothetical individual and despite, you know, of a similar age, education, and work history as the Claimant and, and, and despite

> what this hypothetical individual might complain of the hypothetical individual would be capable of performing work activity at a sedentary level of exertion as defined in the <u>Dictionary of Occupational Titles</u> with the following provisos. Any jobs would have to be just simple, routine in nature. Would provide for an opportunity to occasionally change positions for relief of postural discomfort. And, and also would not entail sustained constant use of the upper extremities. Occasional or frequent use would be okay but not, you know, ongoing use.
>
> A: Right.
>
> Q: Okay. With those provisos could you identify any jobs that such a hypothetical individual might be able to do?
>
> A: Yes, Your Honor.

R. at 38-39.

The record clearly refutes Plaintiff's assertion that the ALJ failed to consider the impact of Ms. Hendrickson's pain. Moreover, in determining Ms. Hendrickson's RFC, the ALJ specifically considered the impact of her low back pain.

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work, as that term is defined in 20 CFR 404.1567(a), but that *due to her low back pain, she was required to occasionally alternate between sitting and standing positions and she could perform postural activities only occasionally*. In addition, due to her carpal tunnel impairment, the claimant was limited to non-continuous use of her bilateral upper extremities. Finally, due to the combination of her impairments and the side-effects of her medications, the claimant was limited to a simple, routine level of unskilled sedentary work.

R. at 18 (emphasis added).

Second, Plaintiff insinuates that the ALJ failed to consider Ms. Hendrickson's extensive history of back pain. In the decision the ALJ summarized the evidence of record regarding the history of back pain stemming from a work-related accident in March of 2004. *See id.* at 12-15.

Ms. Hendrickson began with conservative treatments ranging from medication, chiropractic adjustments, physical therapy and the use of a TENS[3] unit. These conservative methods of treatment, at times, provided relief to Ms. Hendrickson. *See, e.g.,* R. at 170 (March 14, 2006 follow-up evaluation, "She has been doing stretching on her own at home and intermittently has seen the chiropractor, which helps giving her temporary relief."), at 176 (August 8, 2006 follow-up evaluation, "She tells me that her pain is well controlled using Ultram four pills a day" and "She is stretching on a daily basis, and this does help her."). Ultimately, with persistent back pain, Ms. Hendrickson elected to proceed with surgery, an L5-S1 discectomy and fusion procedure, performed on February 7, 2008. *Id.* at 444-45. The surgery proceeded without any complications.

Post-surgery Ms. Hendrickson continued to report back pain during her visits on March 12, 2008, April 9, 2008, May 21, 2008 and July 23, 2008. R. at 438-39, 441-42, 513, 515. During the May 21, 2008 visit Dr. Rastogi noted, "[s]he continues to have significant back pain as well as leg pain. She really has not changed much since surgery. She has not been able to do physical therapy because of time commitments at home." R. at 439, 513. Under *Assessment and Plan* Dr. Rastogi reported, "Ms. Hendrickson has persistent symptoms. At this point I talked to her about continuing with her stretching program. I would like her to do physical therapy if she can. If she cannot I think we just need to monitor her. . . Her pain is significant but it is not severe at this point. I will see her back in two months." *Id.* Two months later, on July 23, 2008, Dr. Rastogi recorded, "Ms. Hendrickson is here for follow up of her back pain. She is stable. It

---

[3] "The abbreviation for transcutaneous electrical nerve stimulation, a technique used to control chronic pain. Electrodes placed over the painful area deliver a mild electrical impulse to nearby nerve pathways, thereby easing pain." *Thefreedictionary.com*, http://medical-dictionary.thefreedictionary.com/TENS (last visited Dec. 2, 2011).

is not as severe as it used to be but it is still significant. It is something that has not changed since I last saw her." *Id.* at 438. Upon examination Dr. Rastogi found Ms. Hendrickson's back was tender with a diminished range of motion. Her strength was 5/5. *Id.*

The ALJ considered the complete objective medical evidence in evaluating the impact of pain on Ms. Hendrickson's work-related abilities. "Even when the undersigned considers that the claimant's pain and other symptoms can sometimes be more severe than suggested by the objective medical evidence alone, pursuant to SSR 96-7p, the undersigned finds that the magnitude of virtually complete dysfunction alleged by the claimant simply is not supported by the record." *Id.* at 20. The Court finds the ALJ's decision is supported by substantial evidence.

*B.     Alleged Failure to Consider Limitations Caused by Bilateral Carpal Tunnel Syndrome*

Plaintiff asserts, although the ALJ recognized in part Ms. Hendrickson's carpal tunnel syndrome in determining her RFC by finding Ms. Hendrickson is limited to "non-continuous use of her bilateral upper extremities[,]" the ALJ failed to consider the full impact of Ms. Hendrickson's carpal tunnel syndrome. Ms. Hendrickson testified that she lacked fine finger manipulation by describing how she has trouble holding a coffee cup and brushing her hair. She also experiences numbness. Under the circumstances Plaintiff argues the ALJ's finding that Ms. Hendrickson can perform sedentary work, where the vast majority of sedentary work requires good use of fingers and hands for repetitive action, "create[s] a legal contradiction that requires an explanation." ECF No. 15-1 at 8. The ALJ did not provide an explanation and his finding, Plaintiff argues, is contrary to SSRs 83-10 and 96-9p. This error warrants a remand.

The record reveals that on June 5, 2007 Ms. Hendrickson was seen for electrodiagnositc testing of the left upper extremity to assess possible carpal tunnel syndrome. The testing "was

10

indicative of a mild to moderate left median neuropathy across the wrist (carpal tunnel syndrome). The lesion is demyelinating, with no evidence of axon loss." R. at 340-41. From this testing Dr. Beneck also noted "no evidence of a cervical radiculopathy, brachial plexopathy, ulnar neuropathy or peripheral polyneuropathy involving the left upper extremity[.]" *Id.* at 341. On August 28, 2007 Ms. Hendrickson's right upper extremity was tested. Dr. Phoon found "[c]linically, Tinel and Phalen signs are positive at the right wrist." *Id.* at 248, 321.

During the September 4, 2008 hearing the following exchange occurred between the ALJ and Ms. Hendrickson:

> Q: – – what about using your, your hands and – –
>
> A: With carpal tunnel, after a while they get numb – –
>
> Q: Uh-huh.
>
> A: – – and my fine motor skills are not there.

*Id.* at 31.

Ms. Hendrickson was examined by Dr. Tuwiner, a State Agency medical consultant, on January 4, 2008. Under *Impact of Activities of Daily Living* Dr. Tuwiner found, "[t]he claimant can do all activities of daily living. . . . She has no impairment of fine motor coordination." *Id.* at 411. Under *Functional Assessment and Medical Source Statement* Dr. Tuwiner opined "[s]he has no manipulative limitations." *Id.* at 413. The ALJ accorded significant weight to Dr. Tuwiner's opinion in determining Ms. Hendrickson's RFC. *Id.* at 20.

At the hearing, in response to questions by her attorney, Ms. Hendrickson testified about the severity of her carpal tunnel syndrome.

> Q: Okay. Now what's the heaviest you think you can lift without any discomfort with your hands?

11

> A: Five pounds. But, as I said, it doesn't automatically affect it, it's when I start doing something and then it starts getting a tingly feeling and then it goes numb and then I can't pick up anything, I can't feel in my fingertips.
>
> Q: Okay. Now do you wear any kind of brace or anything like that?
>
> A: I did wear braces on them but it didn't, it didn't help, it didn't help with the pain or the numbness.
>
> Q: Okay. And what are your doctors saying as far as with your hands? Do they think you need surgery, anything – –
>
> A: They both – –
>
> Q: – – like that?
>
> A: Yes. Dr., both doctors who have done the test said that I do need surgery.
>
> Q: Do – –
>
> A: That it's definitely something that needs to be done in the near future.
>
> Q: So you've had nerve conduction studies on both hands done?
>
> A: Yes.
>
> Q: Now is it one hand that's worse than the other?
>
> A: No, they're pretty much the same for me.

*Id.* at 34-35.

Absent from the record are the opinions of the doctors advising or recommending surgery. The ALJ considered all evidence of record including Ms. Hendrickson's testimony at the hearing and the opinion of Dr. Tuwiner that Ms. Hendrickson has no manipulative

12

limitations.  The ALJ recognized Ms. Hendrickson's carpal tunnel syndrome as a severe impairment at step two and specifically noted the impact of this impairment — limited to the frequent rather than the continuous use of her bilateral upper extremities — in determining Ms. Hendrickson's RFC.  The ALJ found "the magnitude of virtually complete dysfunction alleged by the claimant simply is not supported by the record of evidence."  *Id.* at 20.  Substantial evidence supports the ALJ's finding.

5. **Conclusion**.

Substantial evidence supports the decision that Ms. Hendrickson was not disabled within the meaning of the Act from March 6, 2004, the alleged onset date, through September 30, 2008, the date last insured.  Accordingly, the Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.


Date: <u>December 22, 2011</u>                          _____/s/_____
                                                                         WILLIAM CONNELLY
                                                                 UNITED STATES MAGISTRATE JUDGE